## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**LLOYD NICHOLSON,**

     **Petitioner,**

     **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

     **Respondent.**

     **CASE NO. 2:19-CV-4745**
     **JUDGE MICHAEL H. WATSON**
     **Magistrate Judge Kimberly A. Jolson**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties.  For the reasons that follow, it is **RECOMMENDED** that the Petition be **DENIED** and this action be **DISMISSED**.

### I.     BACKGROUND

Petitioner challenges his conviction after a jury trial in the Morgan County Court of Common Pleas on felonious assault.  The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶2} Appellant and A.T., the victim in this matter, have known each other for approximately twenty years. On or about December 30, 2016, A.T. went to appellant's residence, planning to purchase Xanax pills. A.T., who has admitted to an addiction to Xanax, opiates, and alcohol, later testified she was "foggy" about who drove her there, and she indicated that she could have been drinking at the time. Tr. at 109.

> {¶3} A.T. and appellant got into a verbal argument at some point, but appellant eventually went into his bedroom to lie down. A.T., having purchased about twelve Xanax pills, then left the residence and walked to the nearby residence of Cliff Nicholson, appellant's brother. She had been there for about thirty minutes when appellant showed up. She later testified that "it's kind of spotty. I was messed up." Tr. at 93. Another argument developed at some point concerning appellant's

accusation that A.T. had stolen some of his Xanax. A.T. subsequently testified that appellant struck her with his fist in the side of her face, recalling: "I think it knocked me out. I'm pretty sure. I don't remember anything until hearing his brother yell, and I got up off the floor and ran out of the house." Tr. at 94.

{¶4} A.T. headed toward the residence of her friend Teresa R., who lived nearby. Appellant came over later, acting agitated and cursing about A.T. Teresa R. finally forced him out of her house. A.T. was then given a ride to her sister's residence.

{¶5} The next day, A.T. was taken to the hospital. An X-ray examination allegedly found nineteen orbital fractures around her eye socket and a blood clot over and under her eye. A.T. was then sent by ambulance to Grant Medical Center in Columbus.

{¶6} Matt Cook, appellant's parole officer, became aware of the incident and contacted Deputy Brian West of the Morgan County Sheriff's Office.1 The two officers then went to appellant's residence and spoke with him. Cook thereupon arrested appellant, transported him to the sheriff's office, and determined that appellant tested positive for methamphetamine. Tr. at 142.

{¶7} Deputy West contacted A.T. by telephone at the Grant Medical Center and collected more information about the incident. West later testified that appellant admitted he had been in an argument with A.T. about medication allegedly being stolen. Appellant told him that he had gotten angry and "shoved her down * * * and she hit her head on either a chair or the floor." Tr. at 129. Appellant told West on December 31, 2016 that he had recently smoked methamphetamine; however, appellant appeared coherent to the deputy. Tr. at 130.

{¶8} Deputy West later that day met in person with A.T. and obtained verbal and written statements from her. He also took photographs of her injuries. Further investigation took place, as further detailed infra.

{¶9} On January 12, 2017, appellant was indicted on one count of felonious assault, R.C. 2903.11(A)(1), a felony of the second degree. Appellant pled not guilty, but he was not able to post bond. The matter proceeded to a jury trial on August 29, 2017.

{¶10} After hearing the evidence and arguments of counsel, the jury found appellant guilty of felonious assault.

{¶11} Appellant was thereafter sentenced to seven years in prison, with jail-time credit based on his date of arrest. He was also fined $ 5,000.00 and ordered to pay the costs of the action, to include court-appointed attorney fees. Appellant was further provided notification concerning post-release control.

{¶12} Appellant filed a delayed notice of appeal on May 24, 2018. The State of Ohio filed a response on June 1, 2018, indicating it did not oppose the delay. This Court granted appellant's request for leave to file a delayed appeal on June 12, 2018.

{¶13} "I. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."

*State v. Nicholson*, 5th Dist. No. 18AP-0005, 2019 WL 1356315, at \*1–2 (Ohio Ct. App. Mar. 25, 2019).  On March 25, 2019, the appellate court affirmed the trial court's judgment.  *Id*.  On July 10, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State v. Nicholson,* 156 Ohio St.3d 1453 (Ohio 2019).

On October 25, 2019, Petitioner filed this pro se habeas corpus petition.  He asserts, as his sole ground for relief, that his conviction was against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his conviction.  It is the Respondent's position that this claim does not provide Petitioner a basis for relief.

**II.     STANDARD OF REVIEW**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case.  The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798 (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (internal quotation marks omitted) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)). Moreover, "[f]actual

4

determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner.  *See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).

## III.  DISCUSSION

### A.  Manifest Weight

Petitioner asserts that his conviction on felonious assault was against the manifest weight of the evidence.  This claim, however, does not provide a basis for federal habeas corpus relief.  *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n.4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *see also Taylor v. Warden, Lebanon Correctional Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (citations omitted) (same).

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence— as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v.*

5

*Martin*, 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

### B. Sufficiency of the Evidence

Petitioner also asserts that the evidence is constitutionally insufficient to sustain his conviction on felonious assault. Specifically, he argues the evidence was not enough because the victim could not recall the details of the assault and admitted being under the influence of drugs, and the State failed to introduce medical records regarding her injuries or testimony from treating medical personnel. Under these circumstances, says Petitioner, the evidence failed to establish that he caused her injuries. (*Traverse,* Doc. 18, PAGEID # 399–400.) Importantly, Petitioner does not dispute the factual findings of the state appellate court.

The state appellate court rejected Petitioner's claim on the merits:

> {¶15} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> {¶16} Appellant herein was convicted of one count of felonious assault under R.C. 2903.11(A)(1), which states: "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn."
>
> {¶17} Pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:
>
>> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>>
>> (b) Any physical harm that carries a substantial risk of death;

6

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶18} During the trial in the present case, Deputy West recalled his observations of the injuries to A.T.'s right eye, which was "severely swollen, blood in her eye." He further noted her eye area was "bruised really bad." Tr. at 130. This testimony was buttressed by photo exhibits. He also indicated she was "very shaken," "scared" and "crying." Tr. at 132. Deputy West indicated he has been employed in law enforcement for seven years. He has investigated "dozens" of cases involving assaults and crimes of violence and has received periodic training in those areas. Tr. at 132–133.

{¶19} Appellant emphasizes that Deputy West also did not speak with any medical professionals at the hospital, did not request or review any medical records, and did not get statements from any paramedics or hospital personnel. He also points out that A.T. did not follow up on her recommended therapy, but he concedes she told the jury that she did not have medical insurance or transportation to appointments. *See* Tr. at 98.

{¶20} However, Teresa, to whom A.T. had gone for help, testified that A.T. told her appellant had "hit her and then he started banging her face off the floor." Tr. at 153. Teresa also noted that when A.T. came to her residence, she was "really badly scared, shaking" and "just darting * * * almost like she was waiting for [appellant] to walk in." Tr. at 152.

{¶21} A.T. herself testified at trial that her face, particularly in the area of her nose and upper lip, was numb for about three or four months after the incident. Tr. at 99. She also indicated that at time of trial was still getting frequent headaches. Tr. at 99–100. A.T. learned that she had nerve damage, but she did get feeling back in her face. Tr. at 102. Nonetheless, A.T. recalled that her face swelled up and "hurt pretty bad" for a few months, and that it was the worst pain she had ever experienced besides childbirth. Tr. at 103.

{¶22} We have recognized in the civil context that "[p]ain and suffering are subjective feelings, [and] the injured person's testimony is the only direct proof of such damages * * *." *Burton v. Dutiel*, 5th Dist. No. 14-CA-00024, 2015-Ohio-4134, 43 N.E.3d 874, ¶ 91, citing *Youssef v. Jones*, 77 Ohio App.3d 500, 602 N.E.2d 1176 (6th Dist. Lucas 1991). In a criminal case, the State need not present expert

medical testimony to establish the element of serious physical harm. *See State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 24. In addition, Ohio courts have also determined that "serious physical harm" exists where the injuries caused the victim to seek medical treatment. *Id*. at ¶ 23, citing *State v. Muncy*, 4th Dist. Scioto No. 11CA3434, 2012–Ohio–4563, ¶ 23.

{¶23} We also note that appellant admitted to Parole Officer Cook that he had shoved A.T., and that she may have struck her face on a chair, although he denied hitting her. *See* Tr. at 141, 143. Ohio courts have held that it is a foreseeable consequence for someone to fall to the ground after being punched in the head or pushed. *See State v. Benson*, 8th Dist. Cuyahoga No. 106214, 2018-Ohio-2235, ¶ 21. Thus, even assuming arguendo the jurors were not provided with sufficient proof of a punch to the head by appellant, reasonable minds could have also determined that appellant's violent act of pushing ultimately resulted in serious harm to A.T.

{¶24} Therefore, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable finders of fact could have found appellant guilty of felonious assault, beyond a reasonable doubt.

*State v. Nicholson*, 2019 WL 1356315, at *2–3.

The Fourteenth Amendment's Due Process clause, which is applicable here, "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson,* 443 U.S. at 324 n.16).

Additionally, when determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The

prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson,* 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson,* 443 U.S. at 326).

Further, federal habeas courts apply a "double layer" of deference to state court determinations of the sufficiency of the evidence. Deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle to meet.

For the reasons discussed by the state appellate court, Petitioner has failed to do so here. In particular, the state appellate court did not err by relying on, *inter alia*, A.T.'s, Deputy West's, and Teresa's testimony and then concluding that substantial evidence supports Petitioner's conviction. Indeed, when construing all of the evidence in the light most favorable to the prosecution, the Court agrees that the evidence is constitutionally sufficient to sustain Petitioner's conviction. So the record does not reflect a basis for relief.

## IV. CONCLUSION

Accordingly, it is **RECOMMENDED** that the Petition be **DENIED** and this action be **DISMISSED.**

**<u>Procedure on Objections</u>**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: September 18, 2020                         /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE